UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:10cr0164 |
| VERSUS | * | JUDGE HAIK |
| DR. ALLISON HARGRAVE | * | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Before the court is the Joint Motion to Seal Government Exhibit 1, ("the Exhibit") which was introduced during the July 7, 2010 pretrial detention hearing of the defendant, Allison Hargrave ("Hargrave"). [rec. doc. 32]. The Exhibit is a twenty-four page compilation of emails allegedly exchanged between the defendant, Hargrave, and the minor victim. The Exhibit appears to contain the email addresses of both the defendant and the victim; those email addresses were not disclosed at the hearing.

Prior to the commencement of the detention hearing, the Court denied a defense Motion to Seal the courtroom. Thus, members of the press were permitted to be present during the detention hearing. The transcript of the hearing is available to the public for review. [rec. doc. 39].

During the cross-examination of defense expert, Dr. Frank M. Ochberg, the government questioned Dr. Ochberg regarding portions of the emails contained in the Exhibit which were relevant to issues regarding the continued detention of the defendant.

Following the detention hearing, members of the press attempted to obtain copies of the Exhibit. Accordingly, the Government filed a non-specific Motion to Seal [rec. doc.

30], which was followed by the instant Joint Motion to Seal Government Exhibit 1. [rec. doc. 32].

The Court, recognizing that the Joint Motion sought to limit the public's right of access to court proceedings, an issue on which the news media should be permitted to be heard, invited any person, including the news media, to file in the record of this proceeding, by July 19, 2010, a memorandum in support, or in opposition, to the Joint Motion to Seal. The Lafayette offices of *The Daily Advertiser* and *The Advocate* (the major newspapers of general circulation in the Lafayette, Louisiana area) were provided notice of their right to be heard on this issue. Pending a final ruling by the Court, the Exhibit was ordered temporarily sealed. [rec. doc. 35].

In response, the Court received, by facsimile and hand delivery, a letter from counsel for Capitol City Press, the publisher of *The Advocate*, and a letter from the President-Publisher and Executive Editor of *The Daily Advertiser,* dated July 16, 2010 and July 19, 2010, respectively.[1] The former advises that Capitol City Press "will not petition to intervene . . . to oppose the parties Joint Motion"; the latter asks the court "to dismiss the joint motion to have the exhibit sealed." No motion to intervene was filed by any person or entity, and no memorandum of argument or legal authority was filed of record.

The First Amendment secures, in favor of the public and press, a presumption of openness to preliminary hearings in a criminal case such as this. *Press-Enterprise Co. v.*

---

[1] By Order dated July 20, 2010, the undersigned has directed the Clerk of this Court to file these letters in the record of this proceeding.

*Superior Court of California*, 478 U.S. 1, 13-15, 106 S.Ct. 2735, 2743, 92 L.Ed.2d 1 (1986) ( *Press-Enterprise II* ). The First Amendment presumption of openness applies not only to the courtroom, but also to court files. *United States v. Nix,* 976 F. Supp. 417, 420 (S.D. Miss. 1997) *citing S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849-50 (5th Cir. 1993); *In re Gannett News Service, Inc.*, 772 F.2d 113, 115, 116 (5th Cir. 1985); *see also Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S.Ct. 1306, 1312 (1978) (recognizing a general non-absolute right to inspect and copy public records and documents, including judicial records and documents).

The First Amendment right to openness is a shared right of the accused and the public, the common concern being the assurance of fairness. *Press-Enterprise II*, 478 U.S. at 7. This right is qualified, rather than absolute. *Id.*, 478 U.S. at 9.

The presumption of openness can be overcome, but only when it is shown by the party seeking closure of the courtroom or court file that "there is a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights." *Press-Enterprise II*, 478 U.S. at 13, 106 S.Ct. at 2743. In cases in which the right of the accused to a fair trial might be undermined by publicity, the trial court must determine whether the situation is such that the rights of the accused override the qualified First Amendment right of access. *Id*. at 9.

The accused's right to a fair trial is not the only interest which may be implicated by publicity that closure would prevent. For example, "[t]he protection of victims of sex crimes from the trauma and embarrassment of public scrutiny may justify closing certain aspects of a criminal proceeding." *Id*. at fn. 2 *citing Globe Newspaper Co. v. Superior Court*, 457 U.S. at 607-610, 102 S.Ct., at 2620-2622.

In the context of the general common law right of access, the Court noted that a district court must weigh all factors in determining whether access is appropriate, in light of the relevant facts and circumstances of the particular case. *Nixon*, 435 U.S. at 599, 98 S.Ct. at 1312-1313.

Application of the foregoing principles in striking the balance between, on the one hand, the defendant's right to a fair trial and the victim's right to privacy and protection against the trauma and embarrassment of public disclosure, and, on the other hand, the right of the press and public to have full access to the Exhibit (and the email compilation contained therein), requires that the balance must be struck in this case in favor of sealing the Exhibit.

In this case, given the sexually explicit and detailed nature of the emails at issue, allegedly exchanged between the defendant and a minor child, there is a substantial probability that the defendant's right to a fair trial will be prejudiced if the entirety of the contents of the emails were made public, and that this negative publicity would be prevented by closure. Likewise, it is beyond dispute that the minor child victim of the

charged offense will be subjected to undue trauma and embarrassment in the event that the press and public are permitted full and complete access to the Exhibit.

The interests of both the accused defendant and the minor child victim override the interests of the press and public in this case. While the Court recognizes the qualified First Amendment right of access and openness granted to the press and public, that right is overcome in this case by the need to preserve and safeguard the interests of both the defendant and the victim. The jury venire in this case will be selected from Lafayette Parish and seven smaller surrounding parishes. This area is primarily served by the newspapers (and their affiliated publications) mentioned above. Similarly, the major local television stations which serve this area are located in Lafayette. The defendant's arrest and the partial disclosure of the contents of the Exhibit has engendered extensive press coverage. It is therefore virtually ceratin that any pre-trial dissemination of the full contents of the emails will result in substantial, and potentially incurable, prejudice against the defendant by jeopardizing her right to a fair trial by exposing the jury venire to the salacious emails.

Additionally, it is virtually certain that the release of the emails will subject the minor victim to needless additional emotional harm. Undoubtably, the minor victim has been caused embarrassment, and perhaps has been made the subject of ridicule, as a result of the partial disclosure in open court of the contents of some of the emails. The release of the entirety of the emails, particularly those authored by the victim, will almost certainly

cause any emotional harm suffered by the minor victim to be compounded.

While a change of venue might be available to protect the defendant's right to a fair trial, there is no protection which the Court can fashion to protect the minor victim if the contents of the Exhibit are made public. Thus, the Court concludes that sealing the Exhibit is essential in this case to preserve the "higher values" recognized by the Supreme Court in *Press-Enterprise II*. 478 U.S. at 13-14, 106 S.Ct. 2742-43.

After careful consideration, the Court finds that reasonable alternatives to sealing the Exhibit cannot adequately protect the defendant's fair trial rights or the victim's privacy interest. The Court has considered redacting the undisclosed alleged email addresses of the defendant and victim, as well as those portions of the Exhibit which contain particularly inflammatory language. However, considering the Exhibit as a whole, this is not a satisfactory alternative in this case since such redactions would, in essence, result in redaction of the Exhibit in its entirety. Permitting access to the Exhibit in which the majority of the language has been redacted will do little, if anything, to promote the interests of the public or press.

Finally, significant portions of the Exhibit were disclosed during the detention hearing, at which members of the press and public were present. The transcript of that hearing is available for public review. Thus the public and the press have been afforded access to the content of some of the emails.[2] The contents of the emails which were

---

[2] There is little doubt that more of the content of the Exhibit was disclosed in open court than would have been disclosed had the Court redacted the Exhibit in advance.

disclosed in open court provide a reasonable overview of the contents of the remaining emails.  The Court cannot reasonably tailor an order allowing release which would provide more information than has already been made public.

The Court denied the defendant's motion to close the courtroom during the detention hearing.  The disclosure during the hearing of significant portions of the Exhibit, as well as the public availability of the transcript of the hearing, has, and will continue, to protect the interests of openness and access of both the public and press.  It is therefore reasonable to deny access to the remaining undisclosed portions of the Exhibit.  Indeed, the lack of any formal filing by *The Daily Advertiser, The Advocate* or by any other entity in the record of this proceeding in opposition to the Joint Motion, reinforces this Court's conclusion that sealing the Exhibit does not unduly impair the common concern of fairness and openness.

Accordingly;

**IT IS ORDERED** that the Joint Motion to Seal Government Exhibit 1 [rec. doc. 32] is **granted**.  The **Clerk shall** file Government Exhibit 1 **under seal** pending further order of court.

Signed this 21st day of July, 2010 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE