# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 6:10-0164 |
| | | CIVIL NO. 6:13-0929 |
| VERSUS | * | JUDGE HAIK |
| | | |
| ALLISON HARGRAVE | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Motion to Vacate filed pursuant to 28 U.S.C. § 2255 by *pro se* petitioner, Allison Hargrave.  [rec. doc. 124].  The Government has filed an Answer and Memorandum in Support, to which petitioner filed a Reply. [rec. docs. 133 and 134].  An evidentiary hearing to address whether petitioner received ineffective assistance of counsel due to counsel's failure to demand performance by the government of a "handshake agreement" whereby the government agreed not to call the victim to testify at sentencing in exchange for petitioner's agreement to withdraw her objections to the PSI was held on September 29, 2014.   For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**.

## BACKGROUND

On May 26, 2010, Allison Hargrave was indicted on one count of attempting to entice a minor to engage in criminal sexual activity in violation of 18 U.S.C. § 2422(b). The charge stemmed from Hargrave's sexual relationship with a minor student at a local school where Hargrave was employed.

Hargrave was committed to the custody of the Attorney General pursuant to Title 18 U.S.C. § 4242, to determine if she was suffering from a mental disease or defect rendering her incompetent to stand trial and to determine if she was insane at the time of the offense charged.  [rec. doc. 50].

After being found competent to proceed to trial and not insane at the time of the offense charged [rec. doc. 55], Hargrave plead guilty as charged. [rec. doc. 64].  She was sentenced on August 3, 2011 to 360 months imprisonment. [rec. doc. 78].  Hargrave's conviction and sentence were affirmed on direct appeal on May 4, 2012.  [rec. doc. 121, *United States v. Hargrave*, 470 Fed. Appx. 355, No. 11-30740 (5th Cir. 2012)].

In the instant motion to vacate, petitioner asserts the following claims for relief: (1) that she received ineffective assistance of counsel because counsel: (a) failed to file a motion for change of venue, (b) failed to provide an adequate estimate of petitioner's sentencing range, advising petitioner that she could likely expect a sentence of ten years or within the Guideline range, (c) failed to demand performance by the government of a "handshake agreement" whereby the government agreed not to call the victim to testify at sentencing in exchange for petitioner's agreement to withdraw her objections to the PSI or, alternatively, move for a continuance to prepare to cross-examine the victim, (d) wrongfully advised petitioner not to make corrections to the plea agreement and PSI, thereby leaving many factual errors unchallenged,  (e) failed to refute the government's allegations of rape and other falsities, thereby leaving the government's application of the

2

sentencing factors set forth in 18 U.S.C. § 3553(a) unchallenged, and (f) failed to object to petitioner's sentence, thereby subjecting petitioner to an unfavorable appellate standard; and (2) judicial misconduct based on the alleged bias of Judge Haik.

## LAW AND ANALYSIS

**Claims Properly Considered in this §2255 Motion/Scope of Review**

A federal prisoner may collaterally attack her conviction and sentence by filing a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.  Section 2255 provides four grounds justifying relief:  (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence was in excess of the maximum authorized by law;" and (4) that the sentence is otherwise "subject to collateral attack."

While this language appears broad, the scope of review is actually narrow.  The Supreme Court and the Fifth Circuit have emphasized repeatedly that "a collateral challenge may not do service for an appeal."  *United States v. Shaid,* 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*), *cert. denied*, 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992) *citing United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584 (1982). Following a conviction and exhaustion or waiver of the right to direct appeal, federal courts presume a defendant stands fairly and finally convicted.  *United States v. Cervantes,* 132 F.3d 1106, 1109 (5th Cir.) *reh. denied* (1998) *citing Shaid,* 937 F.2d at 231-32; *Frady,* 456 U.S. at 164.  As a result, review under § 2255 is ordinarily limited to

questions of constitutional or jurisdictional magnitude. *Cervantes,* 132 F.3d at 1109;

*Shaid,* 937 F.2d at 232; *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468 (1962).

However, those issues may not be raised for the first time on collateral review without a

showing of both cause for the procedural default and actual prejudice resulting from the

error. *Cervantes,* 132 F.3d at 1109; *Shaid,* 937 F.2d at 232 *citing Frady,* 456 U.S. at

166.[1]

Other types of error may not be raised under § 2255 unless the defendant

demonstrates that the error could not have been raised on direct appeal and, if condoned,

would result in a complete miscarriage of justice. *Cervantes*, 132 F.3d at 1109 *citing*

*United States v. Pierce,* 959 F.2d 1297, 1301 (5th Cir.), *cert. denied*, 506 U.S. 1007, 113

S.Ct. 621, 121 L.Ed.2d 554 (1992).

In a case involving a guilty plea, this requires a showing that "in light of all the

evidence, it is more likely than not that no reasonable juror would have convicted" the

petitioner. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *United States v. Torres*,

163 F.3d 909, 912 at fn 15 (5th Cir. 1999).

Under the applicable law, petitioner's judicial bias claim may not be considered in

this § 2255 Motion as the claim was not presented on direct appeal and petitioner has

failed to demonstrate either cause or prejudice for her default or claimed actual

---

[1]A departure from the cause and actual prejudice test might be warranted in cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Shaid*, 937 F.2d at 232; *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 2645 (1986). Petitioner does not contest her actual guilt, thus this exception is inapplicable here.

innocence.  Nevertheless, all of petitioner's claims will be addressed.

**I. Judicial Bias**

The government asserts that Hargrave's claim of judicial bias cannot be considered in the context of this § 2255 motion as the issue is neither jurisdictional nor Constitutional; the government further asserts that the claim is procedurally barred because the claim should have been raised on direct appeal.  In response to the instant Motion, Hargrave acknowledges that her claim of judicial bias cannot be considered in the instant collateral proceeding.  Nevertheless, she states that "her position on this ground remains firm." [rec. doc. 134].  The government's position is well taken.

Claims of judicial bias are clearly not jurisdictional and are generally not constitutional in nature.  *See Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 820, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) *quoting F.T.C. v. Cement Institute*, 333 U.S. 683, 702, 68 S.Ct. 793, 804, 92 L.Ed. 1010 (1948) (noting that "most matters relating to judicial disqualification [do] not rise to a constitutional level."); *see also United States v. Masat,* 8 F.3d 20, fn. 1 (5th Cir. 1993).  Although such claims may implicate the Due Process Clause, to reach constitutional level the petitioner must show that the judicial bias constituted a fundamental defect resulting in a complete miscarriage of justice; absent that level of severity, the claim is not cognizable under § 2255.  *United States v. Crouch*, 896 F.2d 78, 81 (5th Cir. 1990); *Masat, supra*.; *United States v. Mackey*, 299 F.Supp.2d 636, 643 (E.D. La. 2004).  Hargrave has not made this showing.

Hargrave complains about comments made by Judge Haik during sentencing. More specifically, Hargrave complains that Judge Haik made false statements to defense expert witness Dr. Frank Ochberg, that Hargrave admitted to raping the victim while under oath at her plea hearing, thereby revealing his bias in her case.

The complained of passage occurred after Ochberg testified that he did not believe Hargrave was a predator and, on cross-examination, had repeatedly attempted to avoid the prosecutor's hypothetical questions about the facts which were established by virtue of Hargrave's factual stipulation and facts of which the prosecutor was aware by virtue of the victim's statements.  For example, at one point Dr. Ochberg stated, "I can't respond to that with a yes or no because your theory of what was consistent is different from my theory of what was consistent;" he additionally responded "I am not able to make a judgment of fact." [rec. doc. 76, pgs. 28- 29; 28-37].

Dr. Ochberg testified as to Hargrave's compassion for abused children which had prevented her from continuing to work with them. On cross examination, Ochberg was asked, "But she did manage to continue and sexually assault and rape a child after that?" The doctor responded evasively stating "I consider that an allegation.  I haven't served as a juror able to hear. . . ."  At which point, Judge Haik intervened and told the doctor that Hargrave had admitted her conduct, to assume that the prosecutor's hypotheticals were fact and to answer the prosecutor's question. [rec. doc. 76, pg. 138].  Had Judge Haik not intervened, the cross-examination would have been needlessly extended. This intervention was no more than is routinely done during cross-examination of opposing

6

expert witnesses.

While it is true that Hargrave did not expressly admit to having forcibly raped the

victim, Judge Haik was correct that Hargrave had admitted to having engaged in lewd and

lascivious sexual activities on multiple occasions with the minor victim. [rec. doc. 65-2].

Further, the victim herself testified at sentencing that Hargrave had, in fact, raped her.

[rec. doc. 76, pg. 87 and 108].  Nevertheless, Judge Haik's intervention merely instructed

the witness to accept the hypothetical as true and answer.

Under these circumstances, it is clear that Hargrave has not shown any judicial

bias, much less judicial bias so severe that it could be deemed as constituting a

fundamental defect resulting in a complete miscarriage of justice.

Comments by a judge that are "critical", "disapproving" or "hostile" do not support

a finding of judicial bias or partiality.  *Mackey*, 299 F.Supp.2d at 643 *citing  Liteky v.*

*United States*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994).  Furthermore,

comments based on what a Judge has learned from his participation in the case and do not

reflect pervasive bias.  *See U.S. v. MMR Corp.*, 954 F.2d 1040, 1045 (5th Cir. 1992).

Finally, adverse rulings do not demonstrate judicial bias. *Masat*, 8 F.3d at fn. 1 *citing*

*MMR Corp.*, 954 F.2d at 1045.

Moreover, given that the victim herself testified that Hargrave had raped her,

coupled with Hargrave's factual admissions as to her repeated sexual encounters with the

minor victim, it is clear that there has not been a fundamental defect or any miscarriage of

justice in this case.   Accordingly, Hargrave's claims of judicial bias do not implicate the

Due Process Clause, and are therefore not cognizable under § 2255.

## II. Ineffective Assistance of Counsel

Courts can consider claims of ineffective assistance of counsel that are brought for

the first time in a § 2255 motion. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir.

1996). However, petitioner's guilty plea constitutes a waiver of all non-jurisdictional

defects in the prior proceedings.  *United States v. Glinsey,* 209 F.3d 386,392 (5th Cir.

2000); *United States v. Bendicks*, 449 F.2d 313, 315 (5th Cir. 1971). "This includes

claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged

to have rendered the guilty plea involuntary." *Glinsey*, 209 F.3d at 392.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish

that (1) her attorney's representation fell below an objective standard of reasonableness;

and (2) there is a reasonable probability that, but for counsel's deficient performance, the

outcome of the proceedings would have been different.  *Strickland v. Washington*, 466

U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984).

The burden is on the petitioner to show that counsel's representation fell below an

objective standard of reasonableness.  *Id.* at 688.  Judicial scrutiny of counsel's

performance must be "highly deferential," and the court must make every effort "to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

alleged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at

689.  The court must "indulge a strong presumption that counsel's conduct falls within the

8

wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (citation omitted). Thus, this Court's review "strongly presum[es] that counsel has exercised reasonable professional judgment." *United States v. Payne*, 99 F.3d 1273, 1282 (5th Cir. 1996) *quoting Lockhart v. McCotter*, 782 F.2d 1275, 1279 (5th Cir. 1986). Courts may "not find ineffective assistance of counsel merely because [the court] disagree[s] with counsel's trial strategy." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) *citing Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). Rather, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke,* 404 F.3d 878, 885 (5th Cir. 2005); *United States v. Cavitt*, 550 F.3d 430, 440 (5th Cir. 2008*) quoting Crane*, 178 F.3d at 314.

*Strickland'*s prejudice element requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[2] A reasonable probability is a probability sufficient to

---

[2]The *Strickland* court outlined the extent of prejudice that must be established by the defendant:
An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of the criminal proceeding if the error had no effect on the judgment. *Cf. United States .v Morrison,* 449 U.S. 361, 364-65 (1981).

Defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability exists if the probability is sufficient to undermine confidence in the outcome.

undermine confidence in the outcome." *Sayre v. Anderson*, 238 F.3d 631, 635 (5th Cir.

2001) *citing Strickland,* 104 S.Ct. at 2068.   With respect to guilty pleas, the prejudice

requirement "focuses on whether counsel's constitutionally ineffective performance

affected the outcome of the plea process." *Glinsey,* 209 F.3d at 392 *quoting Hill v.*

*Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). Thus, the

petitioner "must show that there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial." *Id.*  With

respect to sentencing, to show prejudice, the petitioner must demonstrate a "reasonable

probability that, but for counsel's unprofessional errors, the result of the sentencing

proceeding would have been different."  *Ruiz v. Stephens*, 728 F.3d 416, 425 (5th Cir.

2013).

> A petitioner must affirmatively prove prejudice.  *Deville*, 21 F.3d at 659; *Mangum*

*v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995); *Earhart v. Johnson*, 132 F.3d 1062,1066 (5th

Cir. 1998).  Self serving conclusory statements that the outcome would have been

different "fall far short of satisfying *Strickland'*s prejudice element."  *Sayre*, 238 F.3d at

635.  Moreover, allegations of a mere possibility of a different outcome are insufficient to

establish prejudice. *Lamb v. Johnson*, 179 F.3d 352, 359 (5th Cir. 1999).

---

When a defendant challenges a conviction , the question is whether there
is reasonable probability that absent the errors the fact-finder would
have a reasonable doubt respecting guilt.
*Strickland, supra,* at pages 691-692.

Because both *Strickland* factors, that of deficient performance and prejudice, must be satisfied, "an ineffective assistance contention may be rejected on an insufficient showing of prejudice, without inquiry into the adequacy of counsel's performance." *Strickland,* 466 U.S. at 689-94.  Petitioner must satisfy both prongs of *Strickland,* demonstrating both that counsel's  performance was deficient and that the deficiency prejudiced the defense.  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999); *Green v. Johnson,* 160 F.3d 1029, 1035-36 (5th Cir. 1998). However, "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.*" Green,* 160 F.3d at 1043.

Petitioner contends that she was denied the effective assistance of counsel because her attorney, J. Kevin Stockstill, (a) failed to file a motion for change of venue, (b) failed to provide an adequate estimate of petitioner's sentencing range, advising petitioner that she could likely expect a sentence of ten years or within the Guideline range, (c) failed to demand performance by the government of a "handshake agreement" whereby the government agreed not to call the victim to testify at sentencing in exchange for petitioner's agreement to withdraw her objections to the PSI, or alternatively move for a continuance to prepare to cross-examine the victim, (d) wrongfully advised petitioner not to make corrections to the plea agreement and PSI, thereby leaving many factual errors unchallenged,  (e) failed to refute the government's allegations of rape and other falsities, thereby leaving the government's application of the sentencing factors set forth in 18 U.S.C. § 3553(a) unchallenged, and (f) failed to object to petitioner's sentence, thereby

subjecting petitioner to an unfavorable appellate standard.  For the following reasons, these claims are without merit and, accordingly, do not warrant *habeas* relief.

**Estimate of petitioner's sentencing range**

Petitioner claims that counsel failed to provide an adequate estimate of petitioner's sentencing range, advising petitioner that she could likely expect a sentence of ten years, or within the Guideline range, without telling her that the Court could consider the § 3553(a) factors to impose a greater sentence.  By Reply, petitioner alleges that had she known the Court could impose a sentence greater than ten years, she would not have plead guilty and instead would have proceeded to trial.

Petitioner's argument, which must be construed as an argument that her counsel's ineffectiveness rendered her guilty plea involuntary (*see Glinsey, supra*.), is foreclosed by Fifth Circuit precedent which holds that as long as the defendant is advised of the maximum penalty which can be imposed, an attorney's erroneous prediction is an insufficient basis to render a guilty plea unknowing or involuntary.  *See United States v. Pearson*, 910 F.2d 221 (5th Cir. 1990); *United States v. Gracia*, 983 F.2d 625, 629 (5th Cir. 1993).

In *Gracia*, the defendant claimed that he had relied on his attorney's erroneous prediction of what his sentence would be when he pled guilty. *Gracia*, 983 F.2d at 629. The Fifth Circuit denied the defendant relief, holding that because the "court [had] properly advised the defendant about the possible maximum penalty" the attorney's erroneous prediction was "not a sufficient basis to set aside a guilty plea." *Id. citing*

*United States v. Jones*, 905 F.2d 867, 868 (5th Cir.1990); *see also United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993) ("[R]eliance on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntary. As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea's consequences."); *United States v. Smith*, 143 F.App'x 559 (5th Cir. 2005) (unpublished) ("Smith . . . asserts that if counsel had informed him that the government was seeking to enhance his sentence as a career offender, he would not have pleaded guilty.  As long as the defendant understood the length of time he might possibly receive, however, he was aware of the plea's consequences. Smith was informed . . . of the consequences of his plea. Smith has not established that counsel provided ineffective assistance or that, but for the alleged ineffectiveness, he would have proceeded to trial")

In the present case, before accepting Hargrave's guilty plea, the Court informed petitioner that she could be sentenced to not less than ten years up to a maximum of life imprisonment.  Hargrave stated that she understood this penalty range. [rec. doc. 88, pg. 11].  Hargrave further acknowledged her understanding of this penalty range in writing in both her affidavit of understanding of maximum penalty and her plea agreement. [rec. docs. 65 -1 and 65].

Because Hargrave knew the maximum possible sentence to which she could have been subjected and her actual sentence did not exceed the maximum allowable, Hargrave's  plea was voluntary and her contention that she was denied effective

13

assistance of counsel necessarily fails. *See United States v. Regester*, 2008 WL 1766981, *1-2 (W.D.  La. 2008) (rejecting a similar claim of ineffective assistance of counsel based on counsel's alleged failure to advise of the applicability of the 4B1.1 enhancement because the record demonstrated that the defendant was advised of, and understood, the maximum possible statutory penalty); *Cruz v. United States*, 2007 WL 2752440, *3 (S.D. Tex. 2007) (same);*United States v. Mullen,* 2006 WL 2794317, *4-5 (S.D. Miss. 2006) (record demonstrated petitioner had been advised of the maximum sentence and accordingly record failed to demonstrate that but for counsel's failure to realize the petitioner would be sentenced as a career offender he would not have plead guilty).

Moreover, this Court's records do not support petitioner's belated allegations that she pled guilty because counsel led her to believe that a sentence of ten years, or a sentence within the Guideline range would be imposed, that she did not know that the Court could impose a greater sentence. To the contrary, the records before this Court refute petitioner's present contentions.

A defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath.  *United States v. Cervantes,* 132 F.3d 1106, 1110 (5th Cir. 1998)  *citing  United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985).  "Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings." *Id. quoting  Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1628-29, 52 L.Ed.2d 136 (1977).  Moreover, any documents signed by the defendant in connection with a guilty plea are entitled to "great

14

evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

In her sworn testimony during her plea proceeding Hargrave acknowledged, while under oath, that no one had made any promises, other than those contained in the  plea agreement, that induced her to plead guilty. [rec. doc. 88, pg. 14].  She further acknowledged, while under oath, her understanding that any sentence recommended or agreed to by counsel was not binding on the Court and that the Court could therefore impose a more severe sentence than requested or recommended; it would be up to the Court to determine her sentence. [*Id*. at pg. 14-15].

To verify her understanding, the Court expressly asked Hargrave, "Do you also understand that after it has been determined what guidelines apply to your case, the Court has the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for in the guidelines?", to which Hargrave responded "Yes, sir." [*Id*. at 16]. Likewise, in her written plea agreement, signed by petitioner in connection with her guilty plea, Hargrave was also advised that "the sentencing judge alone will decide what sentence to impose" and that "the failure of the Court to adhere to a sentencing recommendation tendered by counsel shall not be a basis for setting aside the guilty plea." [rec. doc. 65].

Finally, contrary to her present allegations, Hargrave expressly admitted, while under oath at her plea proceeding, that no one "made any predictions, prophecies, or promises to [her] as to what [her] sentence would be." [*Id*. at 15].   Moreover, in her

15

written plea agreement, signed by petitioner in connection with the entry of her guilty plea, Hargrave again acknowledged that no promises, except, those contained in the plea agreement, had been made to her. [rec. doc. 65, pg. 3-4].

In light of the above, petitioner's current claim of ignorance and prejudice is refuted by this Court's records; Hargrave has not shown "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *Glinsey*, 209 F.3d at 392; *Sayre*, 238 F.3d at 635; *see also Green,* 160 F.3d at 1043; *Lamb*, 179 F.3d at 359.  Accordingly, the second prong of *Strickland* has not been satisfied and relief is therefore not warranted.

**Corrections to the plea agreement and PSI**

Petitioner next claims that counsel wrongfully advised her not to make corrections to the plea agreement and, more specifically, to facts contained in the Factual Basis for her plea, thereby leaving many factual errors unchallenged.  More specifically, Hargrave asserts that her attorney told her not to dispute the allegedly incorrect statement that she was a counselor at the school and that she had counseled the victim because this description was "close enough", when, according to Hargrave, she was "a faculty member teaching psychology, theology and yoga," and was "not the victim's counselor." [rec. doc. 134, pg. 5-6].   These inaccuracies allegedly resulted in prejudice and the imposition of an unfair sentence.

Hargrave's belated claim of alleged inaccuracies in the Factual Basis supporting her guilty plea is expressly refuted by petitioner's sworn testimony during her plea proceeding.  While under oath, Judge Haik verified that petitioner had read, understood and signed the factual basis for her plea, and that the facts contained therein were correct and accurate.  In so doing, Judge Haik read each sentence of the factual basis to Hargrave and then expressly asked Hargrave if the facts contained in the sentence were true; in response, Hargrave affirmed separately and individually that the facts contained in each sentence were true. [rec. doc. 88, pg. 17-22].  Furthermore, after reading each sentence individually, Judge Haik asked Hargrave if everything in the document was "true and correct to the best of [her] information, knowledge and belief", to which Hargrave responded "Yes, it is." [*Id.* at 22].  Moreover, when asked "Is there any inaccuracy in the document", Hargrave responded, "No, sir." [*Id.*].  Finally, Hargrave additionally confirmed that she had "no doubt" that the government could prove each fact contained in the document. [*Id.*].

Hargrave's present claim is additionally undermined by counsel's actions with respect to sentencing.  This same information was contained in paragraph 7 of the PSI, to which counsel filed a written objection, arguing that Hargrave was not, in fact, a counselor who had counseled the victim. [rec. doc. 83 at ¶ 7 and pg.  30].

At the sentencing hearing, the victim testified that she considered Hargrave to be her counselor and when she met with Hargrave, Hargrave introduced herself as a

counselor. [rec. doc. 76, pg. 111].   In light of the testimony presented, counsel re-urged his objection to the Court. [*Id*. at pg. 123].  The Court, however, overruled the objection. [*Id*. at pgs. 124-126].

Given Hargrave's sworn testimony at her plea hearing and further given that counsel objected to this same alleged inaccuracy in the PSI, Hargrave has not shown that counsel's performance was deficient, and she has therefore failed to meet the first *Strickland* prong.

Moreover, Hargrave has not met the second *Strickland* prong.  Although Hargrave speculates that counsel's alleged deficiency resulted in prejudice, her self serving conclusory statement to this effect "fall[s] far short of satisfying *Strickland'*s prejudice element."  *Sayre*, 238 F.3d at 635.

The same is true with respect to the alleged inaccuracies in the PSI.  Hargrave faults counsel for not objecting to statements of the victim and her counselor, Deborah Lemoine, contained in their victim impact statements which were incorporated into the PSI at ¶ ¶ 14 and 17.  These statements include statements about the number of times Hargrave and the victim had sex, that Hargrave made unwanted sexual advances to the victim in their first counseling session, that the victim begged Hargrave not to touch her and pleaded with her to stop and, finally, that Hargrave raped the victim. *See Id.*

Hargrave has not shown counsel's performance was deficient.  The record reflects that counsel did, in fact, object to the information contained in the victim impact

statements of both the victim and her counselor, Deborah Lemoine. [rec. doc. 83, pg. 30-31].  The probation office responded, noting that this information was provided by the victim and her counselor and that there was nothing to suggest these statements were inaccurate.  Moreover, the information was properly included in the report pursuant to § 1B1.4 which allows the Court to consider information about the conduct of the defendant when determining a proper sentence.  Accordingly, the information was maintained in the report. [*Id*. at pg. 28].

At the sentencing hearing, the victim testified as to each of these alleged inaccuracies, thereby confirming her version of events. [rec. doc. 76, pgs. 83-88].  In light of the testimony presented, counsel re-urged his objections to the Court. [*Id*. at 123, 126-128].  The Court , however, noting that the victim impact statements "seem[ed] to reflect the views and opinions of those who wrote them",  overruled the objections for essentially the reasons stated by the probation officer, noting that the objections had no impact on the Guidelines calculations. [*Id.* at 128-129].

In light of the record before this Court, counsel was clearly not deficient as he did, in fact, object to the complained of factual errors.  His objection, however, was overruled by the Court.  The first *Strickland* prong is therefore not met.

Hargrave again speculates that counsel's alleged deficiency resulted in prejudice. However, Hargrave's self serving conclusory statement "fall[s] far short of satisfying *Strickland'*s prejudice element."  *Sayre*, 238 F.3d at 635.  This is particularly true, given that the victim testified as to each of these alleged inaccuracies at the sentencing hearing,

thereby confirming her version of events [rec. doc. 76, pgs. 83-88] and, as noted by Judge

Haik at sentencing, the objections had no impact on the Guidelines calculations. [rec. doc.

76, pg. 125, 129 and 130].

    For these reasons, relief is not warranted on this claim.

**Allegations of rape**

    Hargrave faults counsel for failing to refute the government's allegations that she

raped the victim, thereby leaving the government's application of the sentencing factors

set forth in 18 U.S.C. § 3553(a) unchallenged.  As noted above, the victim herself

testified at the sentencing hearing that Hargrave had, in fact, raped her. [rec. doc. 76, pg.

87 and 108].   Thus, there was no basis for an objection.  Counsel need not make a

frivolous objections or a futile motion.  *See United States v. Preston*, 209 F.3d 783, 785

(5th Cir. 2000) citing *Green*, 160 F.3d at 1037 ("[F]ailure to make a frivolous objection

does not cause counsel's performance to fall below an objective level of reasonableness

. . . ."); *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) citing *Koch v. Puckett,* 907

F.2d 524, 527 (5th Cir.1990) ("This Court has made clear that counsel is not required to

make futile motions or objections.").

    Furthermore, as was the case with Hargrave's prior arguments, counsel did, in fact,

object to the allegations of rape contained in the PSI. [rec. doc. 83, pg. 31]. His objection,

however, was overruled by the Court. [rec. doc. 76, pg. 126-129].

    Finally, the undersigned notes that counsel presented the expert testimony of Dr.

Ochberg, who refuted the government's contention that Hargrave was a predatory

pedophile who forcibly engaged in sexual relations, to argue that Hargrave was a woman with multiple mental issues, which, while not providing a defense to the prosecution, could be considered in mitigation; based on this testimony, counsel strenuously argued that the Court fashion a sentence to show compassion to Hargrave. [*Id*. at 116-119]. The Court, however, apparently did not accept this argument.

Under these circumstances, the first *Strickland* prong is clearly not met.

**Performance of "handshake agreement"**

Petitioner claims that counsel was ineffective by failing to demand performance by the government of a "handshake agreement" whereby the government agreed not to call the victim to testify at sentencing in exchange for petitioner's agreement to withdraw her objections to the PSI. Alternatively, Hargrave argues that counsel was ineffective for failing to move for a continuance of the sentencing hearing to prepare to cross-examine the victim.

The record reflects that at the start of the sentencing hearing, defense counsel withdrew his objections to the PSI, including objections directed to statements of the victim and her counselor, Deborah Lemoine, contained in their victim impact statements which were incorporated into the PSI at ¶¶ 14 and 17.  These statements included references about the number of times Hargrave and the victim had sex, that Hargrave made unwanted sexual advances to the victim in their first counseling session, and that the victim begged Hargrave not to touch her and pleaded with her to stop and, finally, that

21

Hargrave raped the victim. [rec. docs. 76, pg. 3; 83, pg. 26-28]. Thereafter, the government advised that it had no witnesses. [rec. doc. 76, pg. 4].

However, after defense expert Dr. Ochberg testified that he did not believe that Hargrave was a predator, AUSA Walker asked for a sidebar. There is no transcript of the sidebar discussion. [*Id.* at pg. 63].

After the defense rested following the testimony of Hargrave's father, Allan Campo, before the victim testified, defense counsel asked for another sidebar.  Again, the sidebar discussion is not in the record. [*Id.* at pg. 81].  The victim then testified, on direct, cross-examination and redirect; she additionally responded to questions posed by the Court. [*Id.* at 81-112].

Prior to the imposition of sentence, in light of the testimony presented, defense counsel re-urged the defendant's objections to the PSI, all of which were overruled. [*Id.* at 123-129].

Because there is no explicit reference to any agreement between the government and defense counsel in the record and because the sidebars were not recorded, the Court held an evidentiary hearing on the issue. Hargrave, defense counsel Stockstill and AUSA Walker testified.

Stockstill and Walker testified that prior to the sentencing hearing, they agreed that if Hargrave would withdraw her objections to the PSI, the government would not call the victim to testify.  Rather, the victim would merely exercise her right to allocution. Stockstill testified that he was concerned that if the victim testified, the Court would be

presented with a swearing match between Hargrave and the victim.  Stockstill testified that he wanted to focus on Hargrave's mental illness which, while not a defense to the prosecution, could be considered by the Court in mitigation of Hargrave's sentence. Stockstill believed that since the factual objections to the PSI did not affect the Guidelines, withdrawing the objections was a fair trade off.  Hargrave testified that Stockstill informed her of the agreement and told her that, in his opinion, this was the best course of action; Stockstill testified that Hargrave did not object to his recommendation. Thus, Stockstill testified that the decision to enter into the agreement was strategic.

Judge Haik was advised of the agreement in Chambers before the hearing began. At that time, counsel also discussed allowing the victim exercise her right of allocution in private, in an adjacent courtroom.

After Dr. Ochberg testified, Walker testified that the victim approached him and stated that she wanted to testify.  Accordingly, Walker called for the sidebar.  During the sidebar, both Walker and Stockstill testified that Stockstill objected to Walker's request to call the victim as a witness.  Stockstill testified that he argued, based on counsel's agreement, that he had not prepared a cross-examination of the victim.  In response, Walker testified that he argued that Dr. Ochberg's testimony had opened the door to rebuttal testimony by the victim.

Judge Haik overruled Stockstill's objection and allowed Walker to call the victim to testify.  However, Judge Haik also allowed Stockstill to reinstate Hargrave's objections to the PSI and told Stockstill that he would grant a continuance of the sentencing hearing

on request.

Stockstill testified that although the government had previously had a psychologist examine Hargrave, the government did not have that psychologist or any other expert available to testify at sentencing.  Therefore, the sole expert testimony presented was that presented by Hargrave, that is, Dr. Ochberg's testimony.   Accordingly, Stockstill testified that he believed that Hargrave had an advantage because she had an expert, while the government did not.  Stockstill testified that if he had requested a continuance, he believed that the government would appear at the next sentencing hearing with its own expert, which would have enabled the government to make the points that were not made by the government through cross-examination of Dr. Ochberg.  Thus, Stockstill made the strategic decision not to request a continuance.

Further, Stockstill testified that while he had not prepared a cross-examination of the victim, he had represented Hargrave from the beginning of the prosecution and was very familiar with the facts of the case and the victim's background.  Stockstill also testified that he had examined the PSI at length, and spent a significant amount of time with Hargrave talking about the objections she wished to present to the Court.  Stockstill therefore cross-examined the victim at length.

Although neither Stockstill nor Walker was certain, Walker believed that during the second sidebar they discussed where the testimony of the victim would be taken. Given the record before this Court, and given that the victim's testimony was, in fact, given in a separate private courtroom, that explanation seems the most plausible.

Based on the record and evidence presented at the hearing, the Court cannot find that counsel's performance was deficient.  Stockstill's decision to enter into the "handshake agreement" with the government was a sound, conscious and informed strategic decision made after consultation with Hargrave who did not object to this course of action.  The decision was a sound, strategic attempt by the defense to focus on Hargrave's mental illness, rather than the myriad factual details which had no impact on the Guidelines calculations and, if contested, were likely to inflame the Court.  The decision to enter into the agreement therefore was not ill chosen.

Further, the record reveals that counsel did, in fact, move for specific performance of the agreement by objecting at the first sidebar to the government's indication that it intended to call the victim to testify.  Judge Haik, however, refused to enforce the agreement by overruling defense counsel's objection.

Moreover, the Court cannot find that the government breached the handshake agreement by calling the victim to testify, or that Stockstill was ineffective by presenting the testimony of Dr. Ochberg in the first instance.  The transcript reveals that Dr. Ochberg's testimony on direct was exactly that which defense counsel intended, that is, expert testimony portraying Hargrave as suffering from mental illness which impaired her decision making.  However, Dr. Ochberg's testimony went beyond that which was intended during cross and re-cross-examination and by the government and questioning by Judge Haik, wherein Dr. Ochberg repeatedly testified that Hargrave was not a predator and did not exploit the victim.  This testimony clearly opened the door to rebuttal

25

testimony by the victim. Under the circumstances, notwithstanding any agreement to the contrary, the government was well within its rights to call the victim as a rebuttal witness.

Nor can the Court find that Stockstill was deficient by failing to move for a continuance of the sentencing hearing to prepare to cross-examine the victim. Stockstill considered Judge Haik's offer and, after weighing the advantages and disadvantages of a continuance, exercised his reasonable professional judgment and made a strategic decision to proceed.  That decision was based upon Stockstill's reasoned determination that a continuance would allow the government to present damaging expert testimony and thereby nullify the advantageous position that Hargrave enjoyed since the sole expert testimony presented was in her favor.

The Court cannot disagree with Mr. Stockstill's reasoning.  Had the government had the opportunity to present its own expert, the Court would clearly have been presented with extremely damaging expert testimony portraying Hargrave in the most unsympathetic light possible, that is, as a calculating and manipulative predator who exploited the victim for her own gratification, not a person suffering from mental illness which impaired her decision making as Dr. Ochberg had opined.  Under the circumstances, Stockstill's tactical decision was clearly reasonable and did not permeate the entire sentencing hearing with obvious unfairness.

Further, although Stockstill had not prepared a cross examination of the victim, the evidence and transcript of the sentencing hearing demonstrates that Stockstill was not unprepared.  The victim testified to those subjects which were included in her victim

26

impact statement, of which, as demonstrated by his objections to the PSI, defense counsel was fully aware.  Moreover, Stockstill had represented Hargrave from the beginning of the prosecution and was very familiar with the facts of the case and the victim's background.

Stockstill had also examined the PSI at length, and spent a significant amount of time with Hargrave talking about the objections she wished to present to the Court. Furthermore, the record reflects that defense counsel skillfully cross-examined the victim, eliciting testimony that she was a willing participant in the relationship, of her alcohol and substance abuse, suicidal thoughts and self-harm prior to entering into a relationship with Hargrave. [rec. doc. 76, pg. 94-95, 102-104].

In sum, Hargrave has not overcome the presumption that the decisions made by Mr. Stockstill were not reasonable trial strategy.  Therefore, counsel's performance was not deficient.  *See Strickland*, *Green*, *Cavitt, Martinez*, and *Crane, supra.*  For these reasons, the first *Strickland* prong has not been satisfied.

Moreover, Hargrave has failed to demonstrate any prejudice as a result of the counsel's alleged failures.  The Court was already aware of the nature of the sexual relationship between the victim and Hargrave by virtue of the facts contained in the victim impact statements which were incorporated into the PSI and there is no evidence that the sentence imposed by Judge Haik would have been any different had the victim not testified or had the sentencing hearing been continued.  To the contrary, Judge Haik

informed Hargrave that he had previously sentenced a psychiatrist who committed a similar crime to the maximum allowable and that he had considered imposing a life sentence in this case, but, fortunately for Hargrave, he could not justify it. [*Id.* at 136-137].

Furthermore, in imposing sentence, Judge Haik relied in large part on Hargrave's own statement to the Court, wherein she admitted exploiting the victim for her own pleasure. [*Id.* at pg. 131, 136].  For these reasons, the second *Strickland* prong is not satisfied.

Hargrave is not entitled to relief on this claim.

**Motion to Change Venue**

Petitioner faults Stockstill for failing to file a Motion to change venue, given the local media coverage of her case.  Hargrave speculates that counsel should have known that this media coverage "undoubtably color[ed] the opinions of the public and the court", thereby depriving her of a fair trial and a fair sentence.

It has long been held that the decision of whether or not to pursue a change of venue is a strategic decision, which is subject to a presumption that the decision constitutes reasonable trial strategy.  *See Duff-Smith v. Collins,* 973 F.2d 1175, 1183 (5th Cir. 1992); *Pruske v. Scott*, 71 F.3d 876, *3 (5th Cir. 1995) *citing  Strickland*, 466 U.S. at 689.  *See also Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985) ("the filing of pre-trial motions 'falls squarely within the ambit of trial strategy'").  To prevail on such a claim, the petitioner must demonstrate prejudice.  *Duff-Smith,* 973 F.2d at 1183 *citing*

*Gilliard v. Scroggy*, 847 F.2d 1141 (5th Cir. 1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct.

818, 102 L.Ed.2d 807 (1989).  However, "[i]t is not enough to show that the publicity – as

to which no specifics are alleged – could have conceivably affected the jurors." *Pruske v.*

*Scott*, 71 F.3d 876, *3 (5th Cir. 1995) *citing Smith v. Puckett*, 907 F.2d 581, 585 (5th Cir.

1990), *cert. denied*, 111 S.Ct. 694 (1991); *Deville v. United States*, 2008 WL 4298385, *4

(W.D. La. 2008).

In this case, Hargrave's general and conclusory argument does not suffice to

present a viable basis for relief.  *Duff-Smith, Pruske* and *Deville, supra*. Based on the

record before this Court, petitioner has not overcome the presumption that the decision

was not reasonable trial strategy, nor has petitioner shown prejudice. Hargrave therefore

is not entitled to relief on this claim.[3]

**Unfavorable appellate standard**

Finally, Hargrave argues that counsel's failure to object to the sentence imposed by

the Court resulted in the application of a harsher standard of review on direct appeal.  As

the government correctly notes, this claim is plainly refuted by the record.  Although a

different standard of review applies to sentencing claims when an objection to the

sentence has been made, the Fifth Circuit opinion in this case clearly demonstrates that

Hargrave's sentence would have been affirmed on appeal even if counsel had objected to

her sentence.  The Fifth Circuit expressly stated that it would affirm Hargrave's sentence

---

[3]Of course, had a change of venue been granted, Judge Haik would still have presided and still sentenced Hargrave.

"[u]nder any standard of review." [rec. doc. 121, *United States v. Hargrave*, 470 Fed. Appx. 355, No. 11-30740 (5th Cir. 2012)].  As such, Hargrave cannot demonstrate any prejudice as a result of counsel's alleged inaction.  For this reason, Hargrave is not entitled to relief with respect to her ineffective assistance of counsel claim.

For these reasons, the undersigned recommends that Allison Hargrave's § 2255 Motion be **DENIED and DISMISSED WITH PREJUDICE.**

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A  party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District

Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. §  2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

Signed this 19th day of February, 2015, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

COPY SENT
DATE: 2/20/2015
BY: _cgc_____
TO: _RTH, pj_____

31